The final case on the calendar, Kennedy v. Equity Transport. Good morning, Honors. Carlo De Oliveira for the appellant Donald Kennedy. The question before the court today in this case is whether the Secretary of Transportation has chosen to exercise jurisdiction over the activities of a driver, a shuttle driver, transporting products for a shipper solely within the state of New York, where the shipper has acknowledged and admitted that at the time that the transportation commenced, the shipper had no intent to have those products transported to any other destination beyond its warehouse locations and that the transportation of those products were for inventory purposes only. But in this case, how would you respond to the view that, in fact, there were warehouses outside of the state and the driver's journey was just one leg of a process of the transportation of these various goods across state lines? Well, I disagree with the assertion made by the district court that that was one leg of the interstate commerce movement because the MCA actually gave the Secretary of Transportation the authority to regulate activities of drivers. And the Secretary of Transportation has done so in its regulations, and the regulations are very specific in that regard. The Secretary of Transportation has ruled that with respect to interstate transportation of goods, in order for that transportation to meet the interstate definition of commerce within the MCA, the Motor Carrier Act, two things must happen. One, the driver must himself or herself drive across state lines. That is not the issue in this case. The record clearly showed that. I don't think that's a fair statement of the law. I think it poses three scenarios, the driver crosses state lines, and then somebody else picks it up and delivers it in trust state. The driver crosses state lines and delivers it in interstate. Or a driver picks it up, drops it off in trust state, and the practical continuity of the movement of the goods goes on because it's intended to be an interstate shipment. It's not intended to be delivered to Latham. It's not intended to be delivered to Gilderland. It's not intended to be delivered to Exit 24, the New York State Thruway, where they don't sell Pepsi. It's intended to be delivered to New Orleans. It's intended to be delivered to Pittsburgh, Pennsylvania. Or Bennington, Vermont, which is actually more likely where it's going to end. And I was actually going to get to that. Right. So I think you've misstated what the Commissioner said the law is. No, Your Honor. Actually, I was the first element is if the driver crosses interstate line. That's the easy case. Exactly.  So let's go to the difficult part, which, by the way, I don't think that this case is difficult at all. And I'll tell you why. Because the regulation specifically says, the regulation from the Secretary of Transportation says that at the time the transportation commences, the shipper has to have a fixed and persistent intent to have that product transported to a destination beyond its storage locations, beyond its warehouse locations, okay? So in order for shipment to exist, in order for commerce to exist, at the time the transportation commenced, the shipper has to know beforehand that it's being delivered to a customer outside. Are you making that argument with respect to the single can of Pepsi that's part of the case, that's part of the pallet that's going to that warehouse? Or are you making that argument with respect to the general shipment or carrying of all the Pepsi that's on the truck that's going to go there, get to VDOP, and then is going to end up in Bennington and Pennsylvania and wherever else? I'm making the argument with respect to both, because the Secretary of Transportation has ruled that if the product is being delivered to a warehouse for inventory purposes, there is no commerce, there is no interstate commerce. And this Court has knowledge, and Billy Yu, which is the case that we're probably going to be discussing here today. Wasn't it going not just to New York, but to surrounding states? But I don't think that's critical with respect to my client, who is a shuttle driver. With respect to the other drivers, the road drivers, who would themselves expect to cross the state lines, that alone makes them subject to the MCA because they are crossing state lines. That's the easy case. That's the easy case. So what you're asking us to do, I think, is to ignore what, in this case, was Judge Peeble's decision, that, look, this is all part of essentially an interstate shipment operation because Pepsi is manufactured up here and it goes everywhere in the Northeast, or I don't know where the other shipment, the manufacturing plant is. And therefore, what your driver was part of was a link in interstate commerce, and therefore, under the law, and you cite, I think, in this fairly careful opinion, what other circuits have decided about this and says, look, that's interstate shipment. My disagreement with Judge Peeble's decision, Your Honor, is that there was never a shipment. As this Court acknowledges, the character of the transportation commences at the time it leaves the warehouse. So the intent of the shipment No, no, no. Why doesn't it start when it leaves the factory? Because it doesn't get to the warehouse unless it's all pulled together and going to a warehouse where it's going to cover us in soda. Right. In this case, there is no evidence that the products being transported by Mr. Kennedy were going to go beyond the warehouse. The Secretary of Transportation Warehouse where? Anywhere in the country, Your Honor. So why isn't that interstate? I'm sorry? Why isn't that interstate shipped? If at the time the transportation, the shipper in this case was very specific. He said at the time we transported those products to our warehouses within New York State and outside New York State, we had no intent of those products being transported anywhere beyond our warehouse. Therefore, my argument is there was never commerce. Now, if what the shipper could have done, which is what the regulations require, is show two things with respect to interstate transportation of products. The shipper could have said, no, we always intended those products to be transported to our customers outside the state of New York. And he could have done that in two ways. Either showing a specific order from a customer that was going to be delivered outside the state of New York or as the totality of the circumstances test. That's not how they do business.